No. 20952.

CLYDE SMALDONE *v.*
THE PEOPLE OF THE STATE OF COLORADO.
(404 P.2d 276)

Decided July 19, 1965.

EDWARD S. BARLOCK, C. J. BERARDINI, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY, Deputy, JOHN E. BUSH, Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE McWILLIAMS delivered the opinion of the Court.

BY writ of error Clyde Smaldone, who will hereinafter be referred to as the witness, seeks reversal of an order of the trial court adjudging him guilty of contempt and sentencing him to the county jail for a period of four months.

Pursuant to subpoena, the witness appeared before a grand jury then sitting in Jefferson County. In response to questions propounded to him before that body by the District Attorney, the witness gave only his name and address, and then refused to answer a series of questions asked of him by the District Attorney on the ground that his answers thereto might incriminate him. In response to one particular question, the witness clearly indicated that it was his intention not to answer any question which the District Attorney might ask of him, save and except the perfunctory ones relating to name and address.

Thereafter the District Attorney caused the entire matter to be brought to the attention of the trial court. At the hearing in connection therewith the trial court indicated that all of the questions which the District Attorney put to the witness before the grand jury were proper, save and except for two, and that the witness's refusal to answer under the circumstances was improper.

Whereupon the court next asked the witness "if the same questions were asked you by the grand jury . . . ., except the ones pertaining to whether you were the same person convicted and sentenced to Leavenworth, and whether you had been in Federal prison, if those two were not asked, would your answer be the same to the other questions"?

In response to this inquiry, counsel for the witness made the following reply:

"After consulting with counsel, Mr. Smaldone has authorized me to state to the court: that if he was specifically ordered to answer questions which the court felt would not by nature of a waiver of the constitutional protections, both under the State Constitution and the Federal Constitution, and upon specific order by this court to answer those questions in that category, that he will do so."

The trial court thereupon immediately proceeded to adjudge the witness guilty of a contempt and then sentenced him to the county jail for a period of four months. It is this judgment and sentence which the witness now seeks to reverse.

■ In urging that the judgment and sentence be affirmed, the Attorney General to a very considerable degree relies upon *Enrichi v. United States*, 212 F.2d 702. From a careful reading of that opinion it is quite clear that it was the blanket refusal "in the presence of the court to reply to any and all questions which might be propounded to him in the grand jury room" which constituted a "completed criminal contempt committed in the very presence of the court" and formed the basis for the subsequent judgment of contempt. In the instant case did the witness in the presence of the court make a blanket refusal to answer any and all questions which had been, or might be, asked of him in the grand jury room? If so, such must somehow be found in the foregoing answer of the witness through his attorney, which answer has been set forth above in its entirety. In our

view, this response does not constitute a blanket refusal as found in *Enrichi v. United States, supra.* Indeed, the response of the witness in the instant case is the very antithesis of a blanket refusal, in that the witness agreed to answer, if ordered. Hence, the witness having made no blanket refusal to answer, *Enrichi v. United States, supra,* does not control the present controversy.

From a reading of the record it is rather unclear as to just what formed the basis for the action taken by the trial court. There is the strong suggestion that the trial court was of the belief that the initial refusal of the witness to answer the questions propounded to him by the District Attorney before a grand jury constituted contempt; especially when it was thereafter determined by the court that the question was one to which the claim of the constitutional right not to incriminate was improper.

■ If this was the thinking of the trial court, it was in error. The mere fact that a witness before a grand jury declines to answer a question propounded to him by the District Attorney does not in and of itself constitute contempt, be it of the grand jury or the court. The declination to answer under the particular circumstances of a given case may even be quite proper. For example, the question which the witness declines to answer may not be pertinent to the matter under investigation, or it may be such as is obviously designed to elicit an incriminating answer.

But even though the refusal to answer before the grand jury be subsequently determined to be improper, the initial refusal of a witness to answer questions propounded to him by the District Attorney before the grand jury does not in and of itself constitute contempt. If the District Attorney does not want to let the matter rest with the refusal of the witness to thus testify, the entire matter must then be brought to the attention of the trial court. Upon such hearing the trial court, among other things, must do the following:

(1) rule upon the propriety of the witness's refusal to

20

answer the questions propounded to him by the District Attorney; and

■ If the refusal to answer be held improper, to then order the witness to answer those questions which the trial court has thus determined are proper and to which a refusal to answer is improper.

■ When a witness is thus ordered to answer a question which he has theretofore declined to answer before the grand jury, he is then confronted with a clear-cut choice: either return to the grand jury and answer the question, or continue in his refusal to answer and thereby subject himself to a finding of contempt based on his refusal to obey the command of the court that he answer. As authority for the foregoing, see *Wyatt v. People,* 17 Colo. 252, 28 Pac. 961; *In re Hitson,* 177 Fed. Supp. 834; *Carlson v. United States,* 209 F.2d 209; and *Quinn v. United States,* 349 U.S. 155, 99 L. Ed. 964, 75 S. Ct. 668.

■ Application of these principles to the instant case demonstrates that regardless of the theory upon which the trial court was proceeding, its order adjudging this particular witness to be in contempt under well-established rules was erroneous and cannot be permitted to stand. That is so unless we are prepared to hold that this witness because of his unsavory background has somehow lost his constitutional rights. This, of course, we cannot do. The sun rises on the evil as well as the good; the rain falls on the just and the unjust; and in like manner the several rights contained in the Federal and State Constitutions are bestowed upon all of us, the unwashed as well as the scrubbed.

■ Having thus determined that the witness is possessed of a constitutional right not to incriminate himself, the only remaining question is whether under the circumstances the order adjudging him in contempt is proper. Under well-established rule he was not guilty of any contempt in his initial refusal to answer before the grand jury. And the record fails to disclose any disobedience by the witness of an order of court that he

answer a particular question or series of questions. In fact we are unable to find any clear and unequivocal order of the trial court in this regard. If in some manner the several utterances of the trial court can somehow be equated into an order of court, the record still fails to disclose any defiance of such order. As noted above, in response to inquiry the witness, through his counsel, did not reiterate any blanket refusal to answer questions before the grand jury, but on the contrary indicated a willingness to reappear before the grand jury and testify.

The judgment is reversed.