## No. 26642

**Frank Otto Bellmann v. The District Court in and for the County of Arapahoe in the Eighteenth Judicial District and Honorable Richard D. Greene, Judge thereof**

(531 P.2d 632)

Decided February 3, 1975.

Walberg and Pryor, W. Randolph Barnhart, for petitioner.

Robert R. Gallagher, Jr., District Attorney, James F. Macrum, Jr., Chief Deputy, Ethan D. Feldman, Deputy, for respondents.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

This is an original proceeding brought pursuant to C.A.R. 21 to prohibit the respondent court from enforcing its order compelling petitioner to disclose to the district attorney of Arapahoe County statements made by him to an investigator for his insurance carrier with regard to an accident in which petitioner was involved.

On June 1, 1974, petitioner Bellmann was driving an automobile which collided with an on-coming car. As a result of the accident, one person was killed and two other people were seriously injured. Bellmann contacted his insurance carrier, Dairyland Insurance Company, who then sent an investigator, Ron Retchless, to take Bellmann's statement. As a result of the accident, the Arapahoe County district attorney filed a criminal information charging Bellmann with manslaughter, 1971 Perm. Supp., C.R.S. 1963, 40-3-104; vehicular homicide, section 40-3-106; two counts of third-degree assault, section 40-3-204; three counts of vehicular assault, section 40-3-205; and driving while under the influence of intoxicating beverages, 1969 Perm. Supp., C.R.S. 1963, 13-5-30.[1]

Upon application of the district attorney, several subpoenas were issued under Crim. P. 17 and served upon Retchless and a Mr. Hansen, Dairyland's claims examiner. The subpoenas demanded, *inter alia,* that Hansen produce "any . . . statements . . . within your possession . . . concerning . . . any automobile accident involving Frank Bellmann . . . ." Petitioner moved to quash the subpoena as it relates to statements made by him to Retchless as claims adjuster and investigator for Dairyland. The court denied the motion to quash, and ordered the Dairyland file turned over to the district attorney. Petitioner then filed a proceeding in this Court, contending that the lower court had no power to order privileged communications turned over to the district attorney. We issued to the respondent a rule to show cause why it should not grant petitioner's motion to quash the subpoena duces tecum. We now make that rule absolute.

---

[1] Now sections 18-3-104; 18-3-106; 18-3-204; 18-3-205; 42-4-1202, C.R.S. 1973.

Petitioner contends that the statements made to Retchless concerning the accident were privileged communications within the attorney-client privilege set forth in 13-90-107(1)(b), C.R.S. 1973. He reasons that because Dairyland is contractually obligated to defend him with counsel of their choosing against any civil actions arising out of the accident, and because he is obligated under the terms of the insurance policy to cooperate fully with Dairyland, the statements to Retchless were, in effect, given to the attorney retained by Dairyland to defend him. Respondent attempts to refute this contention by pointing out that the legislature has spoken fully and comprehensively on the subject of privilege, and has nowhere indicated that the attorney-client privilege encompasses this situation. We agree with the petitioner.

■ Whether the attorney-client privilege relates to communications made by an insured to his insurance company where the insurance company is bound by the terms of the insurance contract to represent him, is a question of first impression in this state. We are not without guidance, however, since other jurisdictions with similar statutes[2] have found the privilege to be applicable in this situation. *Brakhage v. Graff,* 190 Neb. 53, 206 N.W.2d 45 (1973); *People v. Ryan,* 30 Ill.2d 456, 197 N.E.2d 15 (1964); *State v. Kociolek,* 23 N.J. 400, 129 A.2d 417 (1957) (dictum); *Vann v. State,* 85 So.2d 133 (Fla. 1956). *See also* 22 A.L.R.2d 659 for other cases in support of this proposition.

In *People v. Ryan, supra,* the Illinois Supreme Court, confronted with facts similar to those now before this Court, perceived the insurance investigator to be, in effect, an agent for the attorney to be retained by the insurance company. The Court stated:

"We think the rationale of those cases upholding the privileged nature of the communication between insured and insurer where the insurer is under an obligation to defend is more persuasive.

---

[2]13-90-107(1)(b), C.R.S. 1973. An attorney shall not be examined without the consent of his client, as to any communication made by the client to him, or his advice given thereon in the course of professional employment; nor shall an attorney's secretary, stenographer or clerk be examined without the consent of his employer concerning any fact, the knowledge of which he has acquired in such capacity.

We concede that such communications are normally made by the insured to a layman and in many cases no lawyer will actually be retained for the purpose of defending the insured. Nevertheless, by the terms of the common liability insurance contract, the insured effectively delegates to the insurer the selection of an attorney and the conduct of the defense of any civil litigation. The insured is ordinarily not represented by counsel of his own choosing either at the time of making the communication or during the course of litigation. Under such circumstances we believe that the insured may properly assume that the communication is made to the insurer as an agent for the dominant purpose of transmitting it to an attorney for the protection of the interests of the insured." 197 N.E.2d at 17.

■ Application of the rationale of *Ryan* is most appropriate in this case. The Dairyland contract requires the company to defend the petitioner in civil suits such as were filed against him shortly after the accident. Pursuant to this provision, Dairyland retained a local law firm to represent petitioner in these civil matters. Since control of petitioner's defense rested entirely with Dairyland and counsel retained by them, we hold that the insurance investigator who took the petitioner's statement was, in effect, an agent of the attorneys for the purpose of acquiring and transmitting this information to them. As such, the communication falls within the attorney-client relationship and is therefore privileged.

The rule is made absolute.

MR. CHIEF JUSTICE PRINGLE dissents.

MR. CHIEF JUSTICE PRINGLE dissenting:

I respectfully dissent.

Under C.R.S. 1963, 154-1-1, "all persons *without exception,* other than those specified in sections 154-1-2 to 154-1-8 may be witnesses." (emphasis added). Section 154-1-7 lists the various "privileges," or parties who may not testify unless consent is given by the privileged party. The attorney-client privilege is set forth in C.R.S. 1963, 154-1-7(3) (set forth in full in footnote one of the majority opinion). Nowhere is there the slightest indication that the legislature intended that the attorney-client privilege be extended to include communications not specifically listed in the statute. In fact, by referring to the attorney's secretary, stenog-

354

rapher, and law clerk, it appears that the legislature intended to expressly set the parameters of what is effectively a communication to an attorney. In my view, this privilege should be narrowly construed. Dean Wigmore puts it as follows:

"[The attorney-client] privilege remains an exception to the general duty to disclose . . . . It is worth preserving for the sake of a general policy, but is nonetheless an obstacle to the investigation of the truth. It ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle." 8 *J. Wigmore, Evidence* (McNaughton Rev. 1961), 2291 at 554.

Not only does the Court's construction go beyond the apparent intent of the statute, but it is contrary in spirit to our civil and criminal rules of discovery. Therefore, consistent with our discovery policies of openness so that truth may be the ultimate goal of the judicial process, I would follow the reasoning and holdings of the cases that have denied the privilege in this situation. *Jacobi v. Podevels,* 23 Wis.2d 152, 127 N.W.2d 73 (1964); *Jackson v. Kroblin,* 49 F.R.D. 134 (N.D.W. Va. 1970); *Gottlieb v. Breslar,* 24 F.R.D. 371 (D.D.C. 1959).