## No. 27044

**A,B,C,D,E,F,G, and H v. The District Court of the Second Judicial District and The Honorable Leonard Plank, Judge thereof v. Attorney Q**

(550 P.2d 315)

Decided May 24, 1976. Opinion modified and as modified rehearing denied June 14, 1976.

12

Holm, Willis & Dill, Jon L. Holm, for petitioners.

Dale Tooley, District Attorney, Brooke Wunnicke, Chief Appellate Deputy, Thomas P. Casey, Chief Deputy, for respondents.

Yegge, Hall & Evans, Paul D. Cooper, for intervenor.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

Petitioners instituted this original proceeding under C.A.R. 21 seeking relief in the nature of prohibition from the order of the Presiding Judge of the 1975 Statutory Grand Jury, the Honorable Leonard Plank, respondent, which denied their motions (a) to quash grand jury subpoenas and (b) to vacate the order requiring petitioners to appear and testify before the grand jury. Petitioners challenged the subpoenas on four grounds: (1) that the subpoenas constituted unreasonable searches and seizures; (2) that they violated the privilege against self-incrimination; (3) that they violated the attorney-client privilege; and (4) that the subpoenaed material was exempt as the work-product of an attorney.

We issued a rule to show cause why relief sought should not be granted. In order to preserve the secrecy of the grand jury proceedings under Crim. P. 6.2 (1975 Supp.), we also granted petitioners' motion to permit petitioners to use certain anonymous letter designations in place of their names and to submit the exhibits in question in sealed envelopes.[1] The respondent answered the show cause order, and briefs were filed by

---

[1] In this opinion, references to petitioners and the exhibits will be by letter and number, respectively, which will correspond to the designations contained in the motion for protective orders and the sealed exhibits.

all parties, including an intervenor, Attorney Q. The matter is now at issue. The rule is made absolute in part and discharged in part.

The statutory grand jury had been empaneled for some time and was investigating criminal acts alleged to have been committed by Factual Service Bureau, Inc., a private investigation firm, and its activities and relationship to certain insurance companies and attorneys. More specifically, the grand jury was investigating the possible existence of conspiracies to obtain confidential medical information by criminal means for use by the insurance companies and their attorneys in assessing and defending personal injury claims.

Petitioners C, F and H are insurance companies. Petitioners A and B are employees of petitioner C. Petitioners D and E are employees of petitioner F, and petitioner G is an employee of petitioner H. Attorney Q is a member of a Denver law firm which has represented insurance companies C and F for a period in excess of twenty years.[2]

In November, 1975, when petitioners and Attorney Q were either residents of or doing business in Colorado, they were served with grand jury subpoenas.[3] The subpoenas required that each of the petitioners[4] appear before the grand jury to testify and to produce the following documents:

"All of the following for the period of November 1, 1972, to date, in which the Colorado offices or agents of [named insurance company petitioner] are or have been in any way involved:

"1. Original and copies of all correspondence communications (including notations, memoranda summaries or recordings thereof) between [named insurance company petitioner] its agents and employees and Factual Service Bureau, Inc., (hereinafter 'Factual') and its agents and employees.

"2. All cancelled checks of [named insurance company petitioner] payable to Factual.

"3. All billings and invoices of Factual to [named insurance company petitioner].

"4. Originals and copies of all medical information and records (including summaries thereof) transmitted to [named insurance company petitioner] by Factual.

"5. All orders to Factual for medical information or investigation.

"6. Complete file on Claim No. [number inserted], concerning the claim of [claimant's name inserted].[5]

---

[2]The lawyer for insurance company petitioner G has not been subpoenaed and is not a party in this proceeding.

[3]Employee petitioners A and B, D and E, and G were served individually and in their capacities as agents or managers of insurance company petitioners C, F and H respectively. Thus, the insurance company petitioners were served through petitioners A, B, D, E, and G.

[4]The subpoena for Attorney Q is not made a part of the record in this original proceeding.

[5]Some of the subpoenas required files from a petitioner on more than one claim. The claims involved cases not yet referred to counsel, workmen's compensation cases, cases in suit pending trial, cases after trial pending appeal, cases tried once and awaiting retrial, and cases which had been settled.

"7. All microfilm copies of the above, if the originals or copies are not available in documentary form."

On or prior to the date set for their initial grand jury appearances, petitioners filed a motion to quash the subpoenas. A hearing on the motion followed on November 21, 1975. Lawyer Q was permitted to intervene because of his interest in the matter. At the outset of the hearing, the district attorney advised counsel for petitioners and Attorney Q that some of the petitioners were subjects of the grand jury investigation and would be advised of their Fifth Amendment rights when they appeared before the grand jury.

At the beginning of the hearing, the respondent judge advised counsel for petitioners that inasmuch as the subpoenaed documents were corporate records they were not protected by the Fifth Amendment, and he so ruled. Respondent also observed that some of the subpoenaed documents might be subject to the attorney-client privilege and the work-product exemption, but that to make such a determination an *in camera* exclusive inspection by the judge would be required.

The respondent thereupon ordered petitioners to produce all subpoenaed documents for his *in camera* inspection and determination of whether the claimed privilege and exemption applied to any of the documents.

The documents were produced on November 25, 1975, and on December 10, 1975, respondent ruled that a number of subpoenaed documents did not have to be produced because they were either unrelated to the grand jury investigation or were protected by the attorney-client privilege or the work-product exemption. There is no issue raised as to these documents.

The respondent also ordered that the twenty-five exhibits involved in this proceeding be produced because they were relevant to the grand jury investigation and were not protected by the attorney-client privilege. He held that although the documents normally "would be subject to the attorney-client privilege protecting confidential communications and work-product, the privilege was dissolved" because the exhibits contained evidence of possible criminal conduct by petitioners and Attorney Q. The possible criminal conduct was an alleged conspiracy to acquire medical records by illegal means through Factual Service Bureau.

We conclude that respondent's written order of production was correct, except as to two specific documents in which the attorney-client privilege was erroneously found to be dissolved.[6] Therefore, we discharge the rule in its entirety, except as to these two minor exceptions.

---

[6]The two documents are specified in section III. E. of this opinion.

16

## I.

It is, of course, the rule that a grand jury is entitled to obtain by testimony or subpoena all evidence necessary for its deliberations. However, in certain circumstances, exceptions to the general rule are permitted. For example, there is the necessity for conformity with the reasonableness requirement of the Fourth Amendment to the federal constitution. There is also the Fifth Amendment privilege from being compelled to be a witness against oneself, excusing a witness from testifying in a manner that will tend to incriminate him. Public policy also shields certain confidential matters, and in other situations for special reasons a witness may be excused from telling all that he knows. *Losavio v. District Court in & for the Tenth Jud. Dist.*, 188 Colo. 127, 533 P.2d 32 (1975), and cases cited therein.

The petitioners and the intervenor claim that their situation brings them within exceptional situations and that, therefore, they should not be compelled to produce documents nor be required to testify. Our examination of the facts in the light of the applicable law leads us to conclude that the trial court reached the right conclusion, except for the two minor exceptions subsequently noted.

## II.

The petitioners[7] consolidate the Fourth and Fifth Amendment issues throughout their brief. They phrase the issue in this fashion:
"Should the Petitioners, A through H, have the right and privilege to assert their Fourth and Fifth Amendment rights by not appearing, testifying or producing records before the Denver County Grand Jury?"[8]

Concededly, Fourth and Fifth Amendment rights are intertwined. *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 66 S.Ct 494, 90 L.Ed. 614 (1946); *Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886). However, we elect, as far as possible, to treat them separately.

### A. FOURTH AMENDMENT

Petitioners contend that the subpoenas *duces tecum* violate their rights against unreasonable searches and seizures as protected by the Fourth Amendment to the United States Constitution.[9]

---

[7]Attorney Q does not raise these issues, and thus we do not address them as to him.

[8]Petitioner's reply brief answers the question in a similar manner:
"The thrust of respondent's answer brief with regard to the Fourth and Fifth Amendment rights of the Petitioners is essentially that because corporations are involved, there can be no claim of a privilege against self-incrimination. While there is, admittedly, a well-developed body of law dealing with the production of corporate records, there is little doubt that the leading cases in Colorado carve out exceptions under certain circumstances."

[9]Petitioners do not allege any violation of Article II, Sec. 7, of the Colorado Constitution, and we do not decide this case under the state constitutional provision.

██ The Fourth Amendment protects against unreasonable searches and seizures. This protection extends only to those interests in which one has a reasonable expectation of privacy. *United States v. Miller*, (U.S. Sup. Ct., No. 74-1179, announced April 21, 1976) 44 U.S.L.W. 4528; *See Air Pollution Variance Board v. Western Alfalfa*, 416 U.S. 861, 94 S.Ct. 2114, 40 L.Ed.2d 607 (1974); *Hoffa v. United States*, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966).

██ It is clear that the individual petitioners A, B, D, E and G do not have standing to contest the subpoena of the documents in the possession of the corporate defendants because they simply do not have the requisite expectation of privacy in the corporate documents that is required under the Fourth Amendment. However, corporate petitioners C, F and H have an expectation of privacy regarding their corporate records. Unlike the Fifth Amendment, the protection of the Fourth Amendment is available to corporations, *Oklahoma Press Pub. Co. v. Walling, supra*; *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920); *Hale v. Henkel*, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906); and therefore, only the corporate petitioners have standing to raise the Fourth Amendment issue.

The petitioners state categorically that it is improper for the district attorney to use grand jury subpoenas *duces tecum* and that such use effectively abrogates their Fourth Amendment rights.

The production of documents in response to a subpoena *duces tecum* in a number of cases has been likened to and distinguished from searches and seizures under the Fourth Amendment. *Oklahoma Press Pub. Co. v. Walling, supra*; *Wilson v. United States*, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911); *Hale v. Henkel, supra*; *Interstate Commerce Comm'n v. Brimson*, 154 U.S. 447, 14 S.Ct. 1125, 38 L.Ed. 1047 (1894); *Boyd v. United States, supra*.

The petitioners in their petition and in their brief have forcibly argued the Fifth Amendment right against self-incrimination, the attorney-client privilege and the work-product exemption, but have only tangentially mentioned the Fourth Amendment in passing.

██ Since the Fourth Amendment issue has been interjected into these proceedings, we will touch on the issue briefly. It is apparent from our research that, under the circumstances of this case, the Fourth Amendment is not the real issue. In any event, there is no factual basis for a valid Fourth Amendment claim.

The short answer to the Fourth Amendment issue is that there has been no *actual* search and seizure. There has been no invasion of the home, the office, the person, nor any seizure of the private papers of the petitioners against their will. In addition, our rules place the court between

18

the order of the subpoena and an enforcible court order to produce. Crim. P. 17(c) provides that:

"The court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive. . . ."

The petitioners here made such a motion to quash, and the court *in camera* examined the documents specified in the subpoenas before entering its order to produce the documents. Thus, the impartial intervention of the judge stood between the demand of the subpoena to produce and the court's order to produce.

■ There was and is no claim that the documents sought are not relevant to the grand jury's inquiry or that compliance with the order is "unreasonable or oppressive." In fact, it seems to be the position of the petitioners that the protection of the Fourth Amendment is absolute, rather than a protection against *unreasonable* action by the People. The authorities overwhelmingly support the contrary view.

The United States Supreme Court in *Oklahoma Press Pub. Co. v. Walling, supra*, stated the applicable principle of law.

". . . [T]he Fourth [Amendment], if applicable [to subpoenas for the production of corporate records], at the most safeguards against abuse only by way of too much indefiniteness or breadth in the things required to be 'particularly described,' if also the inquiry is one the demanding agency is authorized by law to make and the materials specified are relevant. The gist of the protection is in the requirement, expressed in terms, that the disclosure sought shall not be unreasonable."

This rule has been consistently applied by the courts. *United States v. Morton Salt Co.*, 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950); *Wilson v. United States*, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911); *Hale v. Henkel, supra; Interstate Commerce Comm'n v. Brimson*, 154 U.S. 447, 14 S.Ct. 1125, 38 L.Ed. 1047 (1894); *Boyd v. United States, supra; In re Grand Jury Proceedings*, 486 F.2d 85 (3rd Cir. 1973); *United States v. Malnik*, 489 F.2d 682 (5th Cir. 1974); *Schwimmer v. United States*, 232 F.2d 855 (8th Cir. 1956); *United States v. Reno*, 522 F.2d 572 (10th Cir. 1975); *In re Corrado Bros., Inc.*, 367 F. Supp. 1126 (D.Del. 1973); *Dixon v. Pennsylvania*, 347 F. Supp. 138 (M.D.Pa. 1972); *In re Blue Hen Country Network, Inc.*, 314 A.2d 197 (Del. Super. 1973); *State ex rel. Pollard v. Criminal Court of Marion County*, 329 N.E.2d 573 (Ind. 1975); *Steele v. State ex rel. Gorton*, 85 Wash.2d 585, 537 P.2d 782 (1975).

## B. FIFTH AMENDMENT
### Privilege of Corporations

■ For convenience in dealing with the Fifth Amendment privilege against self-incrimination, we will first consider · the claims of the corporate petitioners C, F and H. The general rule is that the privilege

against self-incrimination is a personal one and may not be invoked by corporations. *Bellis v. United States*, 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974); *Campbell Painting Corp. v. Reid*, 392 U.S. 286, 88 S.Ct. 1978, 20 L.Ed.2d 1094 (1968); *P.U.C. v. District Court*, 180 Colo. 388, 505 P.2d 1300 (1973).

## Privilege of Representatives of Corporations

We now turn our attention to the personal claims of the privilege by the individual petitioners A, B, D, E and G with regard to the command in the subpoenas to produce specified documents (subpoena *duces tecum*).

While it is clear the privilege against compulsory self-incrimination protects a person from compelled production of his private papers and effects, the same person cannot invoke the privilege "to avoid producing the records of a collective entity which are in his possession in a representative capacity, even if these records might incriminate him personally." *Bellis v. United States, supra; see Annot.,* "Self-Incrimination—Corporate Records," 52 A.L.R.3d 636.

All of the exhibits ordered by the respondent to be produced by the individual petitioners are corporate documents and records which were in their custody as representatives of the corporate petitioners. Thus, the respondents' order which directed the individual petitioners to produce "the corporate records under their care, custody and control" was a proper application of the law and did not violate the individual petitioners' Fifth Amendment rights.

## Privilege of Individuals

Petitioners also argue that as suspects the privilege against self-incrimination militates against their having to respond to the command of the subpoena to *appear* before the grand jury. The law is so well settled adversely to the position of the petitioners that the citation of authority is not necessary.

Furthermore, their contention that they cannot be compelled to testify is, under the state of the record, premature. None of the petitioners has been requested nor ordered to take the oath by the foreman of the grand jury. Crim. P. 6(c). The proper time to raise the Fifth Amendment privilege is when a question is propounded by the district attorney or by a juror which the witness believes might tend to incriminate him or furnish a link in a chain of evidence that might incriminate him.

A witness before a grand jury cannot assert his Fifth Amendment right against self-incrimination by a *blanket refusal* to answer all questions put to him. *Smaldone v. People*, 158 Colo. 7, 405 P.2d 208 (1965), *cert. denied*, 382 U.S. 1012, 86 S.Ct. 616, 15 L.Ed.2d 527 (1966); *Smaldone v. People*, 158 Colo. 16, 404 P.2d 276 (1965); *Smaldone v. People*, 158 Colo. 21, 404 P.2d 279 (1965). When asked a specific question or series of questions, the answers to which he believes

will tend to incriminate him, he may refuse to answer. If the grand jury or the district attorney persists, then the matter must be presented to the district court for a ruling pursuant to the procedure outlined in the series of Smaldone cases, supra. Also, see C.R.C.P. 107.

## III. ATTORNEY-CLIENT PRIVILEGE

The common law attorney-client privilege has been codified in Colorado in section 13-90-107, C.R.S. 1973. It reads:

"*Who may not testify without consent.* (1)There are particular relations in which it is the policy of the law to encourage confidence and to preserve it inviolate; therefore, a person shall not be examined as a witness in the following cases:

. . . .

"(b) An attorney shall not be examined without the consent of his client as to any communication made by the client to him or his advice given thereon in the course of professional employment; nor shall an attorney's secretary, stenographer, or clerk be examined without the consent of his employer concerning any fact, the knowledge of which he has acquired in such capacity."

 The attorney-client privilege exists for the personal benefit and protection of the client. *Losavio v. District Court*, 188 Colo. 127, 533 P.2d 32 (1975); *Fearnley v. Fearnley*, 44 Colo. 417, 98 P. 819 (1908); *In re Shapter's Estate*, 35 Colo. 578, 85 P. 688 (1906); *Denver Tramway Co. v. Owens*, 20 Colo. 107, 36 P. 848 (1894); *Sholine v. Harris*, 22 Colo. App. 63, 123 P. 330 (1911). It may be expressly or implicitly waived, but only by the client. *Losavio v. District Court, supra; People v. Mullins*, 188 Colo. 29, 532 P.2d 736 (1975); *Hill v. Hill*, 106 Colo. 492, 107 P.2d 597 (1940); *Fearnley v. Fearnley, supra.* The privilege exists "without regard to the non-corporate or corporate character of the client," *Radiant Burners, Inc. v. America Gas Ass'n*, 320 F. 2d 314 (7th Cir.), *cert. denied*, 375 U.S. 929, 84 S.Ct. 330, 11 L.Ed.2d 262 (1963), and, therefore, the attorney-client privilege is available to corporations. *D. Simon, The Attorney-Client Privilege as Applied to Corporations*, 65 Yale L.J. 953 (1956).[10]

For the purpose of discussing the applicability of the attorney-client privilege to the documents in the twenty-five exhibits, we will separate the documents into categories A through E, and then analyze each general category.

---

[10]The issue of who speaks on behalf of the corporate client in the attorney-client relationship is not raised as an issue in this case. *See Annot.*, 9 A.L.R. Fed. 685. Therefore, we will assume for this case that each of the communications involved was made to or by the corporate client. However, we do not decide the issue in this opinion.

## A. INVOICES AND BILLINGS

■ Category A contains invoices and billings for services rendered by Factual Service Bureau to the insurance company petitioners. Petitioners and intervenor do not specifically advance any arguments regarding the privileged nature of this category of documents. Therefore, the order to produce this category of documents is assumed to be proper.

## B. COMPLETED ORDER FORMS

■ Category B contains completed forms by which the insurance company petitioners ordered services from Factual Service Bureau. Petitioners contend that these documents are privileged under the rationale of *Bellmann v. District Court*, 187 Colo. 350, 531 P.2d 632 (1975).

In *Bellmann* we held that the statement given by an insured to an employee of his insurance company was protected under the attorney-client privilege because of the contractual obligations between the insured and insurer.

"The Dairyland contract requires the company to defend the petitioner in civil suits such as were filed against him shortly after the accident. Pursuant to this provision, Dairyland retained a local law firm to represent petitioner in these civil matters. Since control of petitioner's defense rested entirely with Dairyland and counsel retained by them, we hold that the insurance investigator who took the petitioner's statement was, in effect, an agent of the attorneys for the purpose of acquiring and transmitting this information to them. As such, the communication falls within the attorney-client relationship and is therefore privileged." *Id.*

The effect of our holding was to cast the insured in the role of client, and the insurance company investigator as an agent of the attorney.

The *Bellmann* case is consistent with the cases holding that in order to come within the protection of the privilege, there must be a communication *between the client, i.e.,* insured, *and his attorney or the attorney's agent, i.e.,* an insurance company. The communication in the documents included in category B is not between an insured (client) and his insurance company (attorney's agent). Therefore, the documents are not privileged under *Bellmann*.

## C. INVESTIGATIVE REPORTS

Category C contains investigative reports prepared by Factual Service Bureau at the request of and for the insurance company petitioners.

Petitioners claim that these documents are privileged under *Bellmann*. For the same reason we rejected the *Bellmann* argument in category B, we reject it here.

## D. INTEROFFICE MEMORANDA

Category D contains memoranda between insurance adjustors and their employer insurance companies regarding certain insurance claims. Petitioners again assert the *Bellmann* argument, and again we reject it for the reasons stated in category B.

### E. CORRESPONDENCE BETWEEN
### PETITIONERS AND COUNSEL

Category E consists of correspondence between petitioners and their counsel regarding claims and litigation, potential as well as pending. The documents appear to fall within the protection of the privilege. However, the district attorney contends that the documents are not privileged because they fall within the criminal purpose exception to the attorney-client privilege.[11] We agree with the district attorney in large part, and hold that only the letter dated May 1, 1972, in Exhibit B-3 and the letter dated October 15, 1974, in Exhibit B-4 are protected by the attorney-client privilege.

 Simply stated, the exception provides that communications between a client and his attorney will not be privileged if they are made for the purpose of aiding the commission of a future crime or of a present continuing crime. *Losavio v. District Court, supra; see Annot.*, "Attorney-client privilege as affected by wrongful or criminal character of contemplated acts or course of conduct," 125 A.L.R. 508; *J. Gardner, The Crime or Fraud Exception to the Attorney-Client Privilege*, 47 A.B.A.J. 708 (1961).

 The attorney-client privilege is rooted in the principle that candid and open discussion by the client to the attorney without fear of disclosure will promote the orderly administration of justice. *Losavio v. District Court, supra:* The criminal purpose exception to the privilege grows out of a competing value of our society which is manifested in the rule that "the public has the right to every man's evidence, particularly in grand jury proceedings."[12] Consequently, the attorney-client privilege is not absolute. .

Wigmore addressed the policy underlying the exception in his treatise:

"It has been agreed from the beginning that the privilege cannot avail to protect the client in concerting with the attorney a *crime* or other evil enterprise. This is for the logically sufficient reason that no such enterprise falls within the just scope of the relation between legal adviser and client." 8 *J. Wigmore, Evidence* § 2298.

Professor McCormick also offered observations on the exception in his treatise:

---

[11]The cases seem to disagree on the breadth of the exception regarding non-criminal wrongdoings in the attorney-client relationship. As this case only involves certain alleged *criminal* conduct in the relationship, we need not address the issue of the scope of the exception in this opinion, and, of course, we do not decide it.

[12]*Branzburg v. Hayes*, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972); *Losavio v. District Court, supra.*

"Since the policy of the privilege is that of promoting the administration of justice, it would be a perversion of the privilege to extend it to the client who seeks advice to aid him in carrying out an illegal . . . scheme. Advice given for those purposes would not be a professional service but participation in a conspiracy." *McCormick, Evidence* § 95.

Canon 4 of the Code of Professional Responsibility recognizes the exception with which we are here concerned. DR 4-101 states:

"(c) A lawyer may reveal:

. . . .

"(2) Confidences or secrets when permitted under Disciplinary Rules or *required by law or court order*; (Emphasis added.)

"(3) The intention of his client to commit a crime and the information necessary to prevent the crime."[13]

The petitioners and intervenor do not contend that there is no such exception to the attorney-client privilege. Rather, they question the procedure followed by the court to determine whether the privilege should be dissolved under this exception. They claim that the respondent erred when he ordered the documents produced for his *in camera* inspection without first requiring the district attorney to make a *prima facie* showing that the exception applied.

We recognize that before the privilege can be "driven away" there must be "something to give colour to the charge."[14] The "prima facie evidence" mentioned in *Clark v. United States*, 289 U.S. 1, 53 S.Ct. 465, 77 L.Ed. 993 (1932), is not tantamount to proof of a prima facie case. It means in the present situation that there must have been some foundation in fact for the charge of conspiracy to steal confidential medical records — the very matter which the grand jury was investigating — before the documents were admitted in evidence in the grand jury proceeding.

In considering the privilege which protects the arguments and ballots of a juror, Mr. Justice Cardozo, in *Clark*, analogized that privilege to the privilege which protects communications between an attorney and client. Several of his statements are pertinent to the point under consideration here. He said, *inter alia*:

". . . we think the privilege does not apply where the relation giving birth to it has been fraudulently begun or fraudulently continued. . . . The privilege takes as its postulate a genuine relation, honestly created and

---

[13]Of course, the attorney shall not "engage in illegal conduct involving moral turpitude," DR 1-102(A)(3), or "counsel or assist his client in conduct that the lawyer knows to be illegal or fraudulent," DR 7-102(A)(7), or "knowingly engage in other illegal conduct or conduct contrary to a Disciplinary Rule." DR 7-102(A)(8). He may "refuse to aid or participate in conduct that he believes to be unlawful, even though there is some support for an argument that the conduct is legal." DR 7-101(B)(2). Depending on the circumstances, he may be required to withdraw from the case, DR 2-110(B), or permitted to withdraw. DR 2-110(C).

[14]*Clark v. United States*, 289 U.S. 1, 53 S.Ct. 465, 77 L.Ed. 993 (1932).

honestly maintained. If that condition is not satisfied, if the relation is merely a sham and a pretense, the juror may not invoke a relation dishonestly assumed as a cover and a cloak for the concealment of the truth. In saying this we do not mean that a mere charge of wrongdoing will avail without more to put the privilege to flight. There must be a showing of a *prima facie* case sufficient to satisfy the judge that the light should be let in."

A *prima facie* showing is not required *before* the judge can order a document produced for his *in camera* inspection to determine whether the privilege applies. The judge may order a document or documents produced when the privilege is first contested by the other party. However, there must be a *prima facie* showing that the *exception* applies to each document before the document is actually stripped of its privilege and admitted into evidence. Of course, the burden is upon the party asserting the exception.

Although such a procedure requires that "the secret must be told in order to determine whether it ought to be kept," *Hamil & Co. v. England*, 50 Mo. App. 338 (1892), it is a reasonable method to reconcile the competing policies of the attorney-client privilege and the search for truth by the grand jury.

In his argument to the respondent court on petitioners' motion to quash the subpoenas, counsel for petitioners asked the court to take judicial notice of the fact that on the evening before the argument the grand jury had returned an indictment to the court "in which four individuals involved *in this particular investigation* were indicted on a number of counts." (Emphasis added.) The indictments related to alleged offenses and gave "colour to the charge" that a conspiracy existed to obtain hospital and medical records in an illegal manner.

The documents in categories A, B, C and D are not protected from production under the subpoena *duces tecum* under any theory, as was shown above and will be shown below. There was evidence in these documents that gave "colour" to the charge of possible illegal conduct.

Standing alone, the correspondence in category E is not sufficient to make out a prima facie case for the application of the exception.[15] However, the indictments, combined with the information in the other documents ordered produced, are sufficient evidence to make out a *prima facie* case of the applicability of the criminal purpose exception to each of the documents in which Factual Service Bureau was alluded to. This includes all correspondence between petitioners and their counsel in category E except for two letters: (1) the letter dated May 1, 1972, in Exhibit

---

[15]This does not rule out the possibility in another case that a challenged document on its face will provide the *prima facie* case for the application of the exception.

B-3, and (2) the letter dated October 15, 1974, in Exhibit B-4. These two documents do not mention Factual Service Bureau and, therefore, are protected by the attorney-client privilege.

## IV. WORK PRODUCT

Petitioners contend that the exhibits in categories B, C, D and E are protected by the work-product exemption from compelled disclosure under a grand jury subpoena.[16] This contention raises a unique issue: whether the work-product exemption applies to documents originally prepared in anticipation of civil litigation which are later subpoenaed by a grand jury investigating possible criminal activity involved in the gathering of some of the information contained in such documents. For the purpose of resolving this issue, we will assume, without deciding, that the materials in the exhibits would qualify as work-product in the civil litigation under C.R.C.P. 26(b).

The attorney-client privilege and the work-product exemption are distinct but related theories, arising out of similar policy interests. *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947); 8 *J. Wigmore, Evidence* § 2318 (McNaughton rev.). Generally, the attorney-client privilege protects communications between the attorney and the client, and the promotion of such confidences is said to exist for the benefit of the client. *Losavio v. District Court, supra; Denver Tramway Co. v. Owens*, 20 Colo. 107, 36 P. 848 (1894). On the other hand, the work-product exemption generally applies to "documents and tangible things . . . prepared in anticipation of litigation or for trial," C.R.C.P. 26(b)(3), and its goal is to insure the privacy of the attorney from opposing parties and counsel.

"Historically, a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients. In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways — aptly though roughly termed by the Circuit Court of Appeals in this case as the 'work product of the lawyer.' Were such materials open to opposing counsel on

---

[16]As in their attorney-client privilege claim, petitioners do not claim the work-product exemption for the documents in category A. We will assume that they are not protected by the exemption, without deciding the issue.

mere demand, much of what is now put down in writing would remain unwritten. An attorney's thought, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served." *Hickman v. Taylor, supra.*

The work-product exemption is applicable even when the client is a corporation. *In re Grand Jury Proceedings*, 473 F.2d 840 (8th Cir. 1973); *Radiant Burners, Inc., v. American Gas Association, supra.*

Although it is generally conceded that the work-product exemption applies to discovery in criminal trials, *People v. District Court*, 187 Colo. 333, 531 P.2d 626 (1975); Crim. P. 16; *see United States v. Nobles*, 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975), there is some disagreement as to whether the exemption should apply to grand jury proceedings.

Two recent cases specifically address the issue. In *In re Grand Jury Proceedings, supra*, the Eighth Circuit Court of Appeals held that an attorney was exempt from disclosing under a grand jury subpoena his work-product which was gathered in anticipation of defending his corporate client against criminal charges of alleged bribery of public officials. The grand jury was investigating the client in relation to similar charges.

In *United States v. Terkeltoub*, 256 F.Supp. 683 (S.D.N.Y. 1966), the client was indicted for perjury. The court held that the attorney was exempt under the work-product doctrine from disclosing to a grand jury the details of an alleged meeting he and his client had with a third party where the lawyer supposedly attempted to "persuade" the third party to support his client's story when the third party took the stand to testify about the criminal case.

We agree with the holdings of both these decisions that the exemption should apply in situations before a grand jury where the work-product was gathered for the purpose of preparing to defend the client against an anticipated or pending criminal charge, which charge was also the subject of the grand jury investigation. However, there is an important distinction between these two cases and the present case. In the two cases cited, the attorneys were gathering information in anticipation of criminal charges or in preparation for a criminal trial. In each case, the grand jury sought the work-product to aid its investigation of the same criminal charges against the client for which the work-product was gathered. In the present case, the work-product was gathered in anticipation of civil litigation regarding civil insurance claims, the subject matter of which was wholly unrelated to the grand jury's interest. The work-product in this case, unlike in the two cited cases, was not prepared for the defense of specific criminal charges. The grand jury subpoenaed the materials, not for its interest in the *substance* of the exhibits for its own sake, but rather as

possible evidence of any criminal *means* used in acquiring the information contained in the exhibits.

We hold that work-product prepared by counsel in anticipation of specific civil litigation which is sought by a grand jury is not protected by the work-product exemption unless the subject matter of the civil case and the grand jury proceeding are closely related. *See Republic Gear Co. v. Borg-Warner Corp.*, 381 F.2d 551 (2nd Cir. 1967); *Midland Inv. Co. v. Van Alstyne, Noel & Co.*, 59 F.R.D. 134 (S.D.N.Y. 1973); *Stix Products, Inc. v. United Merchants & Mfrs., Inc.*, 47 F.R.D. 334 (S.D.N.Y 1969); *Philadelphia Electric Co. v. Anaconda American Brass Co.*, 275 F. Supp. 146 (E.D.Pa. 1967); *Insurance Co. of N. America v. Union Carbide Corp.*, 35 F.R.D. 520 (D.Colo. 1964); *Shields v. Sobelman*, 64 F. Supp. 619 (E.D.Pa. 1946); *Annot.*, 35 A.L.R.3d 412, § 19.

The policy underlying the relation of the subject matter test was stated by Judge Doyle in *Ins. Co. of N. America v. Union Carbide Corp., supra*:

"The rationale which compels that we be extremely reluctant to invade an attorney's files is scarcely less applicable to a case which has been closed than to a case which is still being contested. Adversary counsel in an active case, obviously should not normally be free to force his opponent to reveal his strategy; but neither should counsel in a closely related subsequent case, albeit between different parties in part, obtain *carte blanche* to examine an attorney's files in the former case."

In the present case, the work-product was prepared for civil litigation based upon the defense of insurance claims. On the other hand, the grand jury seeks the information for its criminal investigation of the means used to gather the work-product in the civil case.

There are several important distinctions between the insurance litigation and the grand jury investigation. The nature of the proceedings are obviously different. The one, civil in nature, is basically the defense of insurance claims based on personal injuries, while the other is alleged criminal theft of documents occurring during the preparation stage of defending the insurance claims. The alignment of parties is not similar. In one a claimant is suing an insurance company for civil damages, and in the other a grand jury is proceeding to investigate the possible criminal conduct of the insurance company and its employees.

In the present case, these divergent factors lead us to conclude that the civil litigation in which the work-product was gathered is not so closely related to the grand jury investigation as to require the application of the work-product exemption. We hold that none of the documents before us are protected as work-product.

Therefore, the rule is discharged as to all documents in the sealed exhibits in this proceeding except for the two noted in section III. E. of this

28

opinion. As to those two documents, the rule is made absolute.
The rule is made absolute in part, and is discharged in part.
MR. JUSTICE ERICKSON does not participate.