The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Ricky SALAZAR, Defendant–Appellee,

and Concerning Barbara
Zollars, Appellant.

No. 91CA0841.

Colorado Court of Appeals,
Div. II.

April 9, 1992.

Rehearing Denied May 28, 1992.

Certiorari Denied Aug. 31, 1992.

No appearance for plaintiff-appellee.

Jostad/Associates, P. Dinsmore Tuttle, John A. Jostad, Fort Collins, for defendant-appellee.

David F. Vela, Colorado State Public Defender, Thomas R. Williamson, Deputy State Public Defender, Denver, for appellant.

Opinion by Judge ROTHENBERG.

Barbara Zollars, a deputy state public defender, appeals the trial court's order finding her in contempt of court. We vacate the order of contempt and remand for further proceedings.

In the fall of 1990, Zollars was assigned to represent defendant, Ricky Salazar, on a sexual assault charge. During her representation of Salazar, another client represented by the public defender's office made self-incriminating statements which provided the public defender's office with "substantive impeachment evidence" relating to the victim in Salazar's case. The record does not disclose whether Zollars was the attorney representing the other client, nor why the office of the public defender chose to withdraw from Salazar's case rather than withdraw from representation of the other client.

Since the statements of the other client about Salazar's victim created a conflict of interest between Salazar and the undisclosed client, Zollars filed a motion to withdraw as Salazar's attorney. The court granted her motion and appointed a private attorney to represent Salazar.

The private attorney asked Zollars for Salazar's complete file. However, Zollars refused to turn over that portion of Salazar's file containing the incriminating information that had been received from the undisclosed client. Private counsel then filed a motion to compel, and, at a hearing on that motion, Zollars refused to disclose the information, claiming that it was protected by the attorney-client privilege.

The court concluded, however, that neither the attorney-client privilege nor the disciplinary rules prevented Zollars from disclosing the nature of the information to the court *in camera*. As an additional safeguard, the court said that it would examine the information and determine whether disclosure was proper. Thereafter, if the court determined that disclosure was proper, the court agreed not to disclose the information until the parties were given an opportunity to appeal.

The trial court ruled that, in order to decide the issue of privilege, it first needed to know the nature of the confidential information and the manner in which it came to Zollars' attention. Only by doing so could the trial court resolve the conflict between Salazar's right to a fair trial and the right of the undisclosed client to be free from self-incrimination and to the confidentiality of attorney-client communications.

At a second hearing on the motion to compel, Zollars again refused to disclose the information. The court then issued a contempt citation and order to show cause to Zollars and set the matter for a third hearing on the contempt citation.

At the third hearing, Zollars testified *in camera* that: (1) the information related to a past crime of an undisclosed client; (2) the undisclosed client did not want the information disclosed; (3) the client had not waived the right to confidentiality or Fifth Amendment rights; and (4) disclosure of the statements would necessarily reveal the identity of the client. Based on these facts, Zollars again refused to disclose the information.

The trial court ruled that testimony by Zollars *in camera* would serve to protect the attorney-client privilege and would not constitute a waiver of the constitutional privilege. It further found that the Code of Professional Responsibility makes an exception for testimony given pursuant to a court order and that Zollars' refusal to provide the information when ordered to do so interfered with the orderly administration of justice. It also found that Zollars had an affirmative duty to disclose evidence exculpatory to her former client, Salazar, and that Zollars had deliberately and wilfully violated its order.

Based on these findings, the trial court found Zollars in contempt of court and sentenced her to jail until she agreed to comply with the order. The court granted Zollars a stay of execution pending appeal.

I.

■ Zollars contends that even initial disclosure of the client's information at an *in camera* hearing would violate the attor-

ney-client privilege and that, therefore, the trial court abused its discretion by ordering her to disclose the information in that manner. Although we vacate the order of contempt for another reason, we disagree that the trial court abused its discretion by ordering Zollars to testify *in camera.*

Section 13–90–107(1)(b), C.R.S. (1987 Repl. Vol. 6A) provides:

(1) There are particular relations in which it is the policy of the law to encourage confidence and to preserve it inviolate;

therefore, a person shall not be examined as a witness in the following cases:

. . . .

(b) An attorney shall not be examined without the consent of his client as to any communication made by the client to him or his advice given thereon in the course of professional employment. . . .

■ Initially, we note that statutory privileges must be strictly construed, and the burden of proving that a communication is protected by the attorney-client privilege is upon the person asserting the privilege. *People v. District Court,* 743 P.2d 432 (Colo.1987).

■ In addition, the attorney-client privilege is not absolute, and in certain circumstances, when the social policies underlying the doctrine conflict with other prevailing public policies, the attorney-client privilege must give way. *See People v. District Court, supra; Law Offices of Bernard D. Morley, P.C. v. MacFarlane,* 647 P.2d 1215 (Colo.1982) (an attorney may not invoke the attorney-client privilege if the communications are made for the purpose of aiding the commission of a future crime). *See also A. v. District Court,* 191 Colo. 10, 550 P.2d 315 (1976) (*production of documents in camera* was proper so that the court could determine if the crimes-fraud exception to the attorney-client privilege existed).

In reaching its conclusion in *A. v. District Court,* our supreme court stated:

Although [examining the documents *in camera* ] requires that the secret must be told in order to determine whether it

ought to be kept, [such procedure] is a reasonable method to reconcile the competing policies of the attorney-client privilege and the search for truth. . . .

Here, the record is sparse. However, apparently because of numerous unresolved factual issues, the trial court ruled that a preliminary *in camera* disclosure was necessary in order for the court to determine initially whether Zollars' information was even privileged. The trial court also stated its intention to allow Zollars to appeal before any other disclosure occurred.

■ Under these circumstances and in view of the extremely limited record before us, we conclude the trial court did not err in ruling that initial disclosure solely to the court was necessary in order for the court to determine whether an attorney-client privilege did in fact exist and whether any attorney-client privilege that was found to be present had to yield to other prevailing policies. *See A. v. District Court, supra; Law Offices of Bernard D. Morley, P.C. v. MacFarlane, supra.* Because of the confidential nature of an *in camera* hearing, this limited method of disclosure would not violate the attorney-client privilege. *See A. v. District Court, supra; Losavio v. District Court,* 188 Colo. 127, 533 P.2d 32 (1975) (trial court must reconcile conflict between attorney-client privilege and other prevailing policies).

■ Nevertheless, it is undisputed that Zollar's refusal to testify was based upon her legitimate concern about the rights of the undisclosed client. Further, we are unable to discern from the trial court's findings the precise nature of the contempt charged against Zollars. Although the citation was in the nature of punitive contempt, and certain of the trial court's findings suggest that the court was considering punitive contempt, the remedy selected was remedial in nature.

In *In re Marriage of Zebedee,* 778 P.2d 694 (Colo.App.1988), in the context of a dissolution of marriage proceeding, husband was held in contempt for failing to comply with a court order to undergo drug

testing and obtain counseling as a condition of visitation. A division of this court discussed the importance of making the proper distinction between punitive and remedial contempt, and it found that the trial court's order lacked the proper supportive findings. Further, since the court on appeal was not able to conclude as a matter of law that the contempt was remedial in nature, it remanded the matter to the trial court to make additional findings as to how the contemnor could purge himself of the contempt.

Similarly, here, we are unable to determine as a matter of law the nature of the contempt and, given our other disposition, the matter must be remanded for a further hearing. Accordingly, we vacate the order of contempt and remand for further proceedings.

On remand, if after hearing all of the evidence, the trial court determines that there is an attorney-client privilege which must yield, the court should also consider the Fifth Amendment rights of the undisclosed client and determine whether it is necessary to fashion a protective order. *Cf. Martinelli v. District Court,* 199 Colo. 163, 612 P.2d 1083 (1980).

We do not address whether the trial court, on remand, should also appoint independent counsel to protect the constitutional rights of the undisclosed client.

## II.

■ Zollars also contends that the trial court erred in finding her in contempt because she is ethically precluded from disclosing the information under Code of Professional Responsibility DR 4–101. Again, we disagree.

Code of Professional Responsibility DR 4–101 provides:

(C) A lawyer may reveal:

. . . .

(2) Confidences or secrets when permitted under Disciplinary Rules or *required by law or court order.* (emphasis added)

Zollars claims that since the language of DR 4–101 is discretionary, she has the option of deciding whether to disclose the information. We disagree.

In finding that Zollars could disclose the information without violating her ethical obligations, the trial court stated:

It seems to me that the language in DR–401 which says that the attorney may disclose under an order of court means not in the terms of the attorney's option, as to may being discretionary and shall being mandatory, but rather it refers to the fact that it's a violation of the Disciplinary Rules to disclose a client confidence, but he may if he's ordered to without violating the rule.

It really is intending to say that a court order is an exception to the Disciplinary Rule, and therefore, if they are ordered to do so, they can do that and they aren't subject to discipline.

We agree with the trial court's interpretation of DR 4–101; that is, an attorney must disclose information to the court *in camera* if ordered to do so. The interpretation advanced by Zollars would make a court order meaningless. *See A. v. District Court, supra. See also Martinelli v. District Court, supra* (where plaintiff claimed that materials were privileged under the "official information privilege," an *in camera* examination of materials was proper); *People v. Reynolds,* 195 Colo. 386, 578 P.2d 647 (1978) (where plaintiff claimed information was protected by physician-patient privilege, an *in camera* hearing was proper to determine whether the information was privileged).

The order holding Zollars in contempt is vacated, and the cause is remanded for a further hearing at which time Zollars is directed to testify *in camera* as ordered by the trial court.

TURSI and JONES, JJ., concur.