**The PEOPLE of the State of Colorado, Plaintiff-Appellant,**

v.

**Joseph Weldon SWEARINGEN, Defendant-Appellee.**

**No. 82SA84.**

Supreme Court of Colorado, En Banc.

Aug. 30, 1982.

Robert L. Russel, Dist. Atty., David H. Zook, Chief Deputy Dist. Atty., Colorado Springs, for plaintiff-appellant.

Thomas C. Donovan, Colorado Springs, for defendant-appellee.

DUBOFSKY, Justice.

The defendant Joseph Weldon Swearingen is charged in the El Paso County district court with second degree forgery, section 18–5–103(1)(a) and (b), C.R.S.1973 (1978 Repl.Vol. 8)[1] and offering a false instrument for recording, section 18–5–114, C.R.S. 1973 (1981 Supp.).[2] In this interlocutory appeal under C.A.R. 4.1, the prosecution seeks reversal of the district court's ruling granting the defendant's motion to suppress several documents including an original deed of trust and promissory note given to a deputy district attorney by the defendant's attorney and retained by the deputy district attorney. We conclude that the district court erred in ruling that the documents were protected by the attorney-client privilege. Therefore, we reverse the ruling suppressing the documents and remand the case for further proceedings.

On July 27, 1979, the defendant deeded property at 1610 Querida Drive in Colorado Springs to Floid Dickson in exchange for $16,000.00 and Dickson's signature on a promissory note for $38,000.00 secured by a deed of trust executed by Dickson.[3] Swearingen recorded the deed of trust with the El Paso County Clerk and Recorder on December 12, 1980. As recorded, the deed of trust also encumbered Dickson's condominium at 2975 East Fountain Boulevard in Colorado Springs. Dickson learned the contents of the deed of trust on March 1, 1981, when he sought a second mortgage on the condominium.[4] Dickson complained to the district attorney's office that the description of 2975 East Fountain Boulevard had been added to the deed of trust as well as to the promissory note after he signed them on July 27, 1979.

In the course of the investigation conducted by the district attorney's office, the defendant retained as his attorney Orville Kennelly,[5] who sought a meeting with the deputy district attorney in charge of the investigation. During the meeting, Kennelly handed the deputy district attorney several documents including the original deed of trust and promissory note.[6] Because the

---

1. Section 18–5–103 provides, in pertinent part:
   (1) A person commits second degree forgery, if, with intent to defraud, he falsely makes, completes, alters, or utters a written instrument which is . . .
   (a) A deed, will, codicil, contract, assignment, commercial instrument, promissory note, check, or other instrument which does or may evidence, create, transfer, terminate, or otherwise affect a legal right, interest, obligation, or status; or
   (b) A public record or an instrument filed or required by law to be filed or legally fileable in or with a public office or public servant. . . .

2. Section 18–5–114 provides:
   (1) A person commits offering a false instrument for recording in the first degree if, knowing that a written instrument relating to or affecting real or personal property or directly affecting contractual relationships contains a material false statement or material false information, and with intent to defraud, he presents or offers it to a public office or a public employee, with the knowledge or belief that it will be registered, filed, or recorded or become a part of the records of that public office or public employee.

3. The deed of trust is subject to a prior deed of trust in favor of Intermountain Mortgage.

4. Central Colorado Bank apparently held a first mortgage on the condominium.

5. Orville Kennelly was suspended from the practice of law by this Court for one year beginning March 15, 1982. The suspension involved an unrelated matter.

6. It is unclear what relevance the other documents have to the case other than indicating the circumstances giving rise to the promissory note and deed of trust. Although it is not totally clear from the court's order which documents were suppressed, the defendant's suppression motion included the warranty deed, a loan statement and assignment prepared by the Exchange National Bank showing the defendant as the seller and Dickson as the purchaser of the property at 1610 Querida Drive, a copy of the purchaser's receipt for a cashier's check in the amount of $16,000.00, and a copy of the first page of a proposed property settlement in a civil action in the El Paso County District Court (this item was not transmitted with the record to this Court and we do not consider it

deputy district attorney believed the deed of trust and promissory note contained forged material, he made copies of all the documents, gave the copies to Kennelly, and, despite Kennelly's objection, retained the original documents. The district attorney gave the original deed of trust and promissory note to a document examiner for the Colorado Bureau of Investigation and, according to the affidavit supporting a request for the issuance of a warrant for the arrest of the defendant, the examiner reported that a different typewriter or type element was used to type the description of the property known as 2975 East Fountain Boulevard than was used to type the other entries on the documents and that the defendant had printed his address in the space provided on the deed of trust, directing that the recorded deed be returned to him. The Information charging the defendant was filed on November 10, 1981, and the original documents were made a part of the record at the preliminary hearing.

Thereafter, the defendant moved to suppress the use of the documents as evidence against him on the basis that they were seized without a warrant and retained for six months by the district attorney before the defendant was charged. The district attorney countered that keeping the documents as evidence of the crime was not an illegal seizure. Rather than addressing the illegal seizure issue advanced by the defendant,[7] the district court ruled that the documents were communications protected by the attorney-client privilege, which the attorney could not waive, and granted the defendant's motion to suppress.

### I.

■ Section 13–90–107(1)(b), C.R.S.1973 (1981 Supp.) codifies the common law attorney-client privilege:

further), as well as the promissory note and the deed of trust. The first three items were preexisting documents and not, on their faces, incriminating. Therefore, as discussed *infra*, they should not have been suppressed by the court.

7. The People maintain that the defendant did not raise the issue of attorney-client privilege

An attorney shall not be examined without the consent of his client as to any communication made by the client to him or his advice given thereon in the course of professional employment. . . .

The purpose of the privilege is to encourage full and frank communications between attorneys and their clients which promote the administration of justice and preserve the dignity of the individual. *Law Offices of Bernard D. Morley v. MacFarlane*, 647 P.2d 1215 (Colo.1982) (Quinn, J., concurring). Although the privilege is not explicitly grounded in constitutional protections, the inviolability of the privilege in criminal prosecutions is closely interrelated with the individual's right to immunity from self-incrimination under the Fifth Amendment to the United States Constitution and his right to counsel under the Sixth Amendment, which necessarily includes the right to confer in private with his attorney. *Geders v. United States*, 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976); *Law Offices of Bernard D. Morley v. MacFarlane, supra* (Quinn, J., concurring); *State v. Kociolek*, 23 N.J. 400, 129 A.2d 417 (1957); Note, "*The Attorney-Client Privilege: Fixed Rules, Balancing, and Constitutional Entitlement*," 91 *Harv.L. Rev.* 464 (1977); Note, "*The Right of a Criminal Defense Attorney to Withhold Physical Evidence Received from his Client*," 38 *U.Chi.L.Rev.* 211 (1970).

The district court relied on the statement of the attorney-client privilege in 81 *Am. Jur.2d, Witnesses* § 172 at 208 (1976):

It is a long-established rule of common law that an attorney or counselor at law is not permitted, and cannot be compelled, to testify as to communications made to him in his professional character by his client, unless the client consents.

and the district court should not have addressed the issue. Although counsel for the defendant did not directly assert the attorney-client privilege, both counsel informed the district court that the facts were uncontested. The record is sufficient to resolve the attorney-client privilege issue without remanding the case for testimony before the district court.

The district court specifically found that an attorney-client relationship existed between the defendant and Orville Kennelly, and that the defendant, relying on the relationship, gave the original documents to Kennelly. The district court held that Kennelly could not waive the privilege, "[s]ince such communications are privileged on the ground of public policy, it is immaterial that the attorney ... is willing to disclose them." 81 *Am.Jur.2d* at 209.

■ The district court overlooked the case law and commentary establishing that the protection for confidential communications does not apply to physical evidence unless the evidence is created in the course of the lawyer-client consultation. Note, *"Ethics, Law, and Loyalty: The Attorney's Duty to Turn Over Incriminating Physical Evidence,"* 32 *Stan.L.Rev.* 977 (1980); Bender, *"Incriminating Evidence: What To Do With A Hot Potato,"* 11 *Colo.Lawyer* 881 (1982). Physical evidence not protected by the privilege has been distinguished from written confidential communications:

> A professional communication in writing, as a letter from client to lawyer, for example, will of course be privileged. These written privileged communications are steadily to be distinguished from preexisting documents or writings, such as deeds, wills, and warehouse receipts, not in themselves constituting communications between client and lawyer.
>
> .    .    .    .    .
>
> [I]f a document would be subject to an order for production if it were in the hands of the client it will be equally subject to such an order if it is in the hands of his attorney.

*McCormick's Handbook on the Law of Evidence,* ch. 10, § 89, at 184–185 (2d Ed. 1972). *See also Law Offices of Bernard D. Morley v. MacFarlane, supra.*

■ In *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1975), the United States Supreme Court held that the attorney-client privilege does not protect pre-existing documents in the hands of an attorney if the Fifth Amendment would not protect the client from producing them. In *Fisher,* the attorney was compelled to turn over tax work papers prepared for a client by a third party accountant because production of the papers did not compel the client to be a witness against himself within the meaning of the Fifth Amendment. When a lawyer possesses incriminating evidence, not privileged under the Fifth Amendment if in the hands of his client, and he voluntarily surrenders the evidence, neither the Fifth Amendment nor the attorney-client privilege offers the client protection under *Fisher.* Bender, *supra* at 890.[8]

Concurring in *Fisher,* Justice Brennan discussed the importance of an expectation of privacy in determining Fifth Amendment protection against the compelled production of testimonial evidence. He noted that whether the information sought to be produced has been disclosed to or was within the knowledge of a third party is relevant to application of the attorney-client privilege. *Couch v. United States,* 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973). Because the degree to which the paper holder sought to keep private the contents of the papers he desires not to produce is relevant, Justice Brennan concludes:

> Production of documentary materials created or authenticated by a State or the Federal Government, such as automobile registrations or property deeds, would seem ordinarily to fall outside the protection of the privilege.

*Fisher v. United States, supra,* 425 U.S. at 426, 96 S.Ct. at 1588.

---

**8.** Because the attorney in the instant case voluntarily gave the evidence to the district attorney, we need not decide whether the attorney had a duty to turn over the evidence, *see, e.g., Morrell v. State,* 575 P.2d 1200 (Alaska 1978); *In re: Ryder,* 263 F.Supp. 360 (E.D.Va.) *aff'd* 381 F.2d 713 (4th Cir. 1967); and *State ex rel. Sowers v. Olwell,* 64 Wash.2d 828, 394 P.2d 681 (1964); nor do we need to determine whether the evidence could have been subpoenaed, *see Fisher v. United States, supra;* Note, *Stan.L. Rev., supra,* or the subject of a warrant, *Zurcher v. Stanford Daily,* 436 U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978); *Fisher v. United States, supra; Law Offices of Bernard D. Morley v. MacFarlane, supra.*

██ In the case before us, the defendant had no expectation of privacy in the deed of trust and the promissory note.[9] He recorded the deed of trust with a public official, the El Paso County Clerk and Recorder, and the deed ¡ of trust is enforceable only through foreclosure by the public trustee. Similarly, the promissory note is only enforceable through a court of law. These documents existed before the defendant established an attorney-client relationship with Kennelly. Even though the documents may be incriminating, their production does not compel the defendant to be a witness against himself, and the attorney-client privilege does not protect either the attorney or the client from disclosing the original documents. Therefore, the district court erred when it suppressed the documents.

### II.

██ Because the district court ruled that the documents in question were protected by the attorney-client privilege, it did not reach the defendant's contention that the deputy district attorney took and retained them illegally. The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Given that Kennelly handed the papers to the deputy district attorney in the district attorney's office, we do not view what transpired as a seizure within the scope of the Fourth Amendment.

Ruling reversed and case remanded for further proceedings.

LEE, J., does not participate.

---

**9.** Whether the defendant expected his attorney to give the documents to the district attorney is irrelevant given the nature of the documents.