The SOUTHLAND CORPORATION,
d/b/a 7–Eleven Food Store,
Plaintiff-Appellant,

v.

CITY OF WESTMINSTER CITY COUNCIL, Acting as the Local Licensing Authority for the City of Westminster, Colorado, and George Hovorka, Fred Allen, Nancy Heil, Charles Duff, Rodney J. Sheffer, Kenneth Harris, and George Bruner, in Their Capacities as Members of Said City Council, Defendants-Appellees.

No. 86CA0043.

Colorado Court of Appeals,
Div. II.

May 28, 1987.

Rehearing Denied June 25, 1987.

Certiorari Denied Nov. 30, 1987.

Chrisman, Bynum & Johnson, P.C., Robert L. Matthews, Ann E. Byrne, Boulder, for plaintiff-appellant.

Martin R. McCullough, City Atty., Westminster, for defendants-appellees.

BABCOCK, Judge.

Applicant, the Southland Corporation, seeks review of the district court judgment affirming the decision of the Westminster City Council denying its application for a fermented malt beverage license. We reverse and remand with directions.

Applicant applied for a license to sell 3.2 beer, *see* Colorado Beer Code, § 12–46–101, et seq., C.R.S (1985 Repl.Vol. 5), at its 7–11 convenience store in Westminster. Pursuant to § 12–46–117(3), C.R.S. (1985 Repl. Vol. 5), a public hearing was held before Westminster's Special Permit and Licensing Board, which found that the applicant was of good character, *see* § 12–46–108(1)(b), C.R.S. (1985 Repl.Vol. 5), that the reasonable requirements of the neighborhood were not being met by existing 3.2 beer outlets, and that the neighborhood inhabitants desired an additional outlet. *See* § 12–46–108(2), C.R.S. (1985 Repl. Vol. 5). The Special Permit and Licensing Board recommended issuance of the license.

The city council rejected this recommendation, however, and, pursuant to Westminster Municipal Code § 11–3–2(K)(2) (1979), held a second public hearing to determine whether applicant should be granted a license.

At that hearing, applicant presented testimony from six neighborhood residents concerning the needs and desires of the neighborhood. They testified that a 3.2 beer license at applicant's convenience store would fill a neighborhood need because it was more convenient to purchase beer there than at local supermarkets, and because applicant's store stayed open later. Applicant also presented petitions signed by 180 patrons of the store favoring issuance of the license. The store manager testified that he received approximately five requests for beer each weekday, and between 18 and 25 requests on weekends.

A representative from a scientific survey firm retained by the City to conduct a needs-and-desires-petition survey on the application testified that, based on a sample of 149 adult neighborhood residents, 53% favored issuance of the license, 9% were opposed, and 38% either had no opinion or would not sign the petition. Of those who were willing to sign, 82% favored the license, a figure the pollster stated was "very high."

A Westminster police detective testified that a background check of the applicants revealed nothing that the police could recommend as a reason against granting the license. The detective also testified that there were five other 3.2 beer outlets in the neighborhood, four supermarkets and a convenience store four blocks away from applicant's store. One supermarket was located within the same block as applicant's

store, but testimony indicated that it kept shorter hours.

Over applicant's objection, three representatives from the Career Enrichment Park, a developmental and vocational school located across the boulevard from applicant's store, testified in opposition to the license. An assistant principal testified that a quarter of her students were 18 and, thus, could purchase 3.2 beer at applicant's store, and she expressed her concern that these students would buy beer for underage students, or that the store would sell beer to minors. Another assistant principal testified that many of the students were handicapped and on medication, and that she was afraid they would drink beer while on medication. Finally, the school's principal, after commenting generally on the negative effects of alcohol on youth, testified that his vocational students worked with high-powered machinery, and expressed his fears about students working with such equipment while under the influence of alcohol.

Although the city council found that applicant had the requisite good character pursuant to § 12–46–108(1)(b), based on the school's proximity to applicant's store and its conclusion that the neighborhood's reasonable requirements were being met by existing outlets, the council found that there was sufficient good cause to deny the license, "in order to avoid an unreasonable risk of danger to the handicapped students" at the school. The application was subsequently denied.

Pursuant to § 12–46–118, C.R.S. (1985 Repl.Vol. 5) and C.R.C.P. 106(a)(4), applicant sought judicial review of the decision in district court, which affirmed the denial of the license.

Applicant contends that the trial court erred in ruling that the city council did not act arbitrarily and capriciously in denying its license. We agree.

▮ In acting on an application to sell 3.2 beer, the local licensing authority is vested with wide discretion. *Board of County Commissioners v. National Tea Co.*, 149 Colo. 80, 367 P.2d 909 (1962). This discretion is not unbridled, however, and

the authority's action is subject to judicial review. *National Convenience Stores, Inc. v. City of Englewood*, 192 Colo. 109, 556 P.2d 476 (1976). If the decision was arbitrary or capricious, or otherwise without good cause, *see* § 12–46–106(7)(a), C.R.S. (1985 Repl.Vol. 5), it is subject to reversal. Section 12–46–118; *Buddy & Lloyd's Store No. 1, Inc. v. City Council*, 139 Colo. 152, 337 P.2d 389 (1959).

▮ Here, a prima facie case for issuance of the license was established. This included a showing that applicant was of good moral character, that neighborhood needs were not being met, and that the neighborhood inhabitants desired the license. *See Board of County Commissioners v. Salardino*, 136 Colo. 421, 318 P.2d 596 (1957). Once a prima facie case has been made, the obligation is on the protestants to present evidence sufficient to justify denial. Absent such evidence, a denial of the license becomes arbitrary and capricious and cannot stand. *See Board of County Commissioners v. Skaff*, 139 Colo. 452, 340 P.2d 866 (1959); *Buddy & Lloyd's Store No. 1, Inc. v. City Council, supra.*

The only evidence in the record against issuance of the license is the showing of five other outlets in the neighborhood and the testimony of the school officials. We conclude that this was insufficient to defeat applicant's prima facie case.

▮ Mere existence of other outlets is an inadequate basis upon which to deny a license. *See National Convenience Stores, Inc. v. City of Englewood, supra.* No evidence was presented indicating that the other outlets met the needs of the neighborhood, and the testimony of applicant's manager about the frequency of customer requests for beer tended to show that they did not. *See Board of County Commissioners v. National Tea Co., supra.* The survey and petitions presented to city council overwhelmingly established neighborhood support for the license. *See Bauer v. Board of County Commissioners*, 163 Colo. 568, 431 P.2d 863 (1967). Residents testified that convenience of access and operating hours were of primary concern,

and that current neighborhood needs were not being adequately met. *See Potter v. McClearn*, 171 Colo. 334, 467 P.2d 54 (1970). No rebuttal testimony was presented. Hence, the city council's denial of the license may not be sustained on this ground.

Applicant argues that the school officials' testimony should not have been admitted because they were not "parties in interest" who could present evidence at the hearing. We conclude that the testimony was properly permitted, but further conclude that it was too speculative to support a denial of the license.

■ Section 12–46–117(4), C.R.S. (1985 Repl.Vol. 5) states that any "party in interest" shall be allowed to "present evidence and to cross-examine witnesses," and it defines that term to include "the owner or manager of a business located in the neighborhood under consideration." The school officials' testimony was admitted on the basis that they were equivalent to managers of a "business," and applicant argues that, as school officials, they were not.

Those persons who may present evidence and cross-examine comprise a narrower group than those who may testify. Thus, even if we were to conclude that the school officials did not fall within the definition of a "party in interest," we would not rule them incompetent to testify if their testimony would aid the local authority in considering the application. *Cf. Kornfeld v. Perl Mack Liquors, Inc.*, 193 Colo. 442, 567 P.2d 383 (1977) (business competitor may testify as "party in interest"). Nonetheless, we conclude that the school principals are equivalent to neighborhood business managers and thus could present testimony.

■ However, an examination of their testimony reveals that it was wholly speculative in nature, and was based exclusively on what "might" occur if the license were granted. As such, it was not entitled to any weight by the local authority, *Mobell v. Meyer*, 172 Colo. 12, 469 P.2d 414 (1970); *McQuate v. City of Boulder Fermented Malt Beverage Licensing Authority*, 161 Colo. 190, 420 P.2d 823 (1966), and there-

fore, it could not be used as grounds for denying the license.

■ Nor could the mere proximity of the school to the proposed outlet justify a denial of the license. In contrast to the provisions governing the issuance of a liquor license, there is no statute governing the permissible distance between a 3.2 beer outlet and a school. *Cf.* §§ 12–47–111(2) and 12–47–138(1)(d)(I), C.R.S. (1985 Repl. Vol. 5). Thus, although the city council could properly consider the school's proximity, *see La Junta Easy Shops, Inc. v. Hendren*, 164 Colo. 55, 432 P.2d 754 (1967); *Vigil v. Burress*, 157 Colo. 507, 404 P.2d 147 (1965), without something more than mere speculation, *see Mobell v. Meyer, supra; cf. City of Manitou Springs v. Walk*, 149 Colo. 43, 367 P.2d 744 (1961) ("teenage problems" already existed at outlet), a license may not be denied solely because of it. *See U–Tote–M of Colorado, Inc. v. City of Greenwood Village*, 39 Colo.App. 28, 563 P.2d 373 (1977).

We conclude from our review of the record that no relevant evidence was presented to rebut the applicant's prima facie showing. Thus, the city council's denial of the license was arbitrary and capricious, and the district court erred in sustaining it.

Upon a finding of arbitrary and capricious action by a licensing authority, this court may order that a license be issued. Section 12–46–118; *Board of County Commissioners v. Salardino, supra*.

The judgment affirming the license denial is reversed, and the cause is remanded with directions that the matter be returned to the city with an order to grant applicant the license.

SMITH and TURSI, JJ., concur.