**BRASS MONKEY, INC., d/b/a Junction Wine & Spirits, Inc., Plaintiff–Appellee,**

v.

**LOUISVILLE CITY COUNCIL, acting as the local licensing authority for the City of Louisville, Colorado, and Tom Davidson, Margaret Hornbostel, Tom Mayer, Larry Hedding, and Rob Lathrop, in their capacity as members of said local licensing authority, Defendants,**

and

**Douglas L. Harper and Kelly Harper, Intervenors–Appellants.**

No. 92CA1941.

Colorado Court of Appeals, Div. III.

Feb. 17, 1994.

Chrisman, Bynum & Johnson, P.C., Michael H. Bynum and Robert L. Matthews, Boulder, for plaintiff-appellee.

Wood, Ris & Hames, P.C., Donald B. Gentry, Denver, for intervenors-appellants.

Opinion by Judge CRISWELL.

Intervenors, Douglas and Kelly Harper (protestants), appeal the judgment of the trial court that reversed the denial of the retail liquor store license application of Brass Monkey, Inc., (applicant) by the Louisville City Council (City Council) and ordered the license to be granted. We affirm.

The City Council, acting as the local licensing authority, held a public hearing in May 1992 to consider the application for a retail liquor store license. As evidence in support of its application, applicant presented the results of a scientific survey showing that, out of 510 local residents polled, 378 agreed that the reasonable needs of the community were not being met by existing retail liquor outlets; 132 residents polled disagreed; and another 158 declined to participate in the poll. Testimony was presented that the margin of error of this survey was three to five per cent, that the survey sample size was much larger than that typically required by local licensing authorities, and that the number of responses in favor to the survey was eight to nine percent higher than is typical in such a survey.

Applicant also presented traffic flow projections showing increased vehicular traffic in the relevant neighborhood of the proposed outlet and demographic surveys indicating that the mall in which the liquor store was to be located would draw customers from a much larger area than from the area within the city boundaries. Fourteen local residents also testified in support of the issuance of the license.

Only protestants, who own a liquor store in Louisville, and one other liquor store owner testified in opposition to the license. This testimony addressed the lack of a positive effect on the tax base of the proposed outlet,

increased competition that could be expected, and comparisons of the total square footage of liquor stores in the Boulder and Louisville communities. They also asserted that the applicant's sole stockholder had a continuing interest in another liquor store and that he was, therefore, prohibited by § 12–47–129(4)(a) C.R.S. (1993 Cum.Supp.) from acquiring an interest in another license.

Council found that the stockholder had no direct or indirect interest in the other license, but it rejected the application on grounds that the applicant had failed to establish that the reasonable needs of the community were not being met. It emphasized the fact that four retail liquor stores existed within the relevant neighborhood and that another five stores were within a 2.5 mile radius of the proposed store. It also attached significance to the fact that 26% of the persons surveyed objected to the license, noting that the number of persons supporting the application was only a small portion of Louisville residents.

The trial court held that the City Council's action was arbitrary and capricious. It determined that the only competent evidence to rebut the applicant's prima facie case for issuance of the license was the existence of other liquor outlets in the community. Applying *National Convenience Stores, Inc. v. City of Englewood,* 192 Colo. 109, 556 P.2d 476 (1976) and *Southland Corp. v. Westminster City Council,* 746 P.2d 1353 (Colo.App. 1987), the trial court concluded this fact was legally insufficient upon which to base the application's denial. Therefore, it directed that, subject to action by the state licensing authority, the license should be issued.

I.

The applicant asserts, as a threshold contention, that the protestants have no standing to challenge the trial court's decision in this case. We disagree.

A.

Standing is an issue which can be raised at any stage of an action, including, as in this case, on appeal. *Bradley v. Industrial Claims Appeals Office,* 841 P.2d 1071 (Colo.App.1992). We accordingly reject the

protestants' assertion that the applicant waived its right to challenge their standing before this court by its failure to object to the protestants' intervention in this action in the trial court.

## B.

██ Relying on *Kornfeld v. Perl Mack Liquors, Inc.,* 193 Colo. 442, 567 P.2d 383 (1977), the applicant asserts that, because the protestants are licensees with whom the applicant would be in competition in the event of the issuance of the license applied for, they may not contest the application beyond appearing before Council. We disagree.

It is true that the licensee of a competing enterprise does not have standing, by reason of any economic injury resulting from that status, to challenge the decision of a local licensing authority to grant a liquor license, either under the Colorado Liquor Code, § 12–47–101, et seq., or under C.R.C.P. 106(a)(4). *Kornfeld v. Perl Mack Liquors, supra; see also Cloverleaf Kennel Club, Inc. v. Colorado Racing Commission,* 620 P.2d 1051 (Colo.1980); *Woda v. City of Colorado Springs,* 40 Colo.App. 173, 570 P.2d 1318 (1977).

However, if that competitor is also a resident of the neighborhood affected, such status as a resident is sufficient to allow a challenge to issuance of the license in the courts; the fact that the resident is also a competitor does not disqualify the resident from such challenge. *Norris v. Grimsley,* 41 Colo.App. 231, 585 P.2d 925 (1978).

In neither the *Kornfeld* or *Woda* cases is there any indication that the competitor was a resident of the affected neighborhood; in each case, the protestants grounded the right to challenge the application solely on the basis of competitor status. Further, the *Kornfeld* opinion determined only that § 12–47–136(5), C.R.S. (1991 Repl.Vol. 5B) did not operate to confer standing upon a competitor; it made no reference to the question of standing of a resident under C.R.C.P. 106(a)(4). *Norris v. Grimsley,* on the other hand, considered a citizen's right to contest the action of the local legislature under C.R.C.P. 106(a)(4).

We conclude, therefore, that, because both protestants are residents of the neighborhood, they have standing to protest the approval of the license proceedings under C.R.C.P. 106(a)(4) and to appeal any adverse judgment of the trial court.

## II.

Protestants first argue that the trial court erred in affirming that portion of the City Council's determination that found that applicant's stockholder had no improper interest in another license. We disagree.

██ C.R.C.P. 106(a)(4) authorizes a district court to grant relief against the decision of a local judicial or quasi-judicial tribunal only in those instances in which the tribunal "has exceeded its jurisdiction or abused its discretion...." This is a stricter standard for review than that imposed by the Administrative Procedure Act, § 24–4–106(7), C.R.S. (1988 Repl.Vol. 10A), so that the local tribunal's decision must be approved unless there is "no competent evidence" to support it.

In this context, " '[n]o competent evidence' means that the ultimate decision of the administrative body is so devoid of evidentiary support that it can only be explained as an arbitrary and capricious exercise of authority." *Ross v. Fire & Police Pension Ass'n,* 713 P.2d 1304, 1308–1309 (Colo.1986).

██ Judged by this standard, we conclude that the City Council's determination that the applicant's stockholder had no indirect interest in another license must be approved.

Section 12–47–129(4)(a), C.R.S. (1993 Cum. Supp.) provides, in relevant part, that:

It is unlawful for any owner ... interested directly or indirectly in any retail liquor store ... licensed pursuant to this article ... [to] be directly or indirectly interested in any other ... retail liquor store....

Colorado Department of Revenue Liquor Code Regulation, 47–129.2, 1 Code Colo.Reg. 203–2, provides, in part:

A. Each license under the Colorado Liquor Code must be held by the owner of the establishment which is licensed. 'Owner' means the person or persons whose proprietary interest is such that they bear risk of loss other than as an insuror, and have opportunity to gain profit from the operation or sale of the establishment.

In determining who is the 'owner', elements considered beside risk of loss and opportunity to profit will include: Possession, who controls the licensee, who guarantees its debts, who is beneficiary under its insurance policies, who acknowledges liability for state and local taxes.

. . . .

C. *A spouse of a licensee may hold a license in their [sic] own right if they [sic] are the owner of the licensed establishment, regardless of whether they [sic] file separate or joint income tax returns.* (emphasis supplied)

Prior to the application here, applicant's sole stockholder owned stock in a corporation holding a retail liquor store license in Boulder. This stock, however, was transferred as a gift to his wife before the subject application was filed. Applying the foregoing regulation, the City Council found that the stockholder no longer had any direct or indirect interest in the Boulder license.

During the license application process, the stockholder fully disclosed to Council the details of the stock transfer and affirmatively averred that he no longer had any interest in the Boulder liquor outlet. He also testified that his wife had independent sources of funds to continue operation of that liquor store and that the other store was now solely his wife's investment.

The issue of what constitutes an "indirect interest" for purposes of § 12–47–129(4)(a) appears to be one of first impression in Colorado. Prior decisions have concerned—and only indirectly—intentional concealment from the licensing authority of a *direct* interest. *See People v. Luciano,* 662 P.2d 480 (Colo.1983); *Law Offices of Bernard D. Morley v. McFarlane,* 647 P.2d 1215 (Colo.1982); *Schoenbeck v. Fermented Malt Beverage Licensing Authority,* 502 P.2d 1111 (Colo.App. 1972) (not selected for official publication).

■ The protestants, therefore, rely on authority from other states to assert that the City Council erred. Such reliance, however, is misplaced.

In two cases cited by protestants, *Odette v. Liquor Control Commission,* 171 Mich.App. 137, 429 N.W.2d 814 (1988) and *Roscia v.*

*Liquor Control Authority,* 69 A.D.2d 1015, 416 N.Y.S.2d 154 (1979), the relevant statutes addressed the prohibition against the indirect interest of law enforcement officers in a licensed liquor outlet—a prohibition based upon differing policy considerations than those present in the Colorado statute.

The policy behind those statutes was to prevent the inherent conflict between a law enforcement officer's potential financial interests and that officer's duty to uphold the state's liquor laws. *Odette v. Liquor Control Commission, supra.* The purpose of § 12–47–129(4)(a), on the other hand, is not to prevent the potential for a conflict of interest, but to *"prevent the control of the outlets for the sale of alcoholic beverages by any persons or parties other than the persons licensed. . . ."* Section 12–47–129(9), C.R.S. (1993 Cum.Supp.) (emphasis supplied).

Further, those decisions can also be distinguished factually from the present case in that both involved officers who possessed a present property right or potential employment interest in the outlet. In *Odette v. Liquor Control Commission, supra,* the relevant statute precluded a police officer from leasing property that was to be used for a liquor outlet. In *Roscia v. Liquor Control Authority, supra,* the court held that a deputy sheriff could not work in a liquor outlet owned by his wife and daughter.

Finally, in *Roscia,* at issue was a condition imposed on the grant of a license requiring the applicant's husband to resign from the local sheriff's department if the license was to be granted, even if he did not.work in the outlet. The court held such condition was arbitrary because no showing of an indirect interest by the husband had been demonstrated. The court concluded that the officer's marriage to the applicant, alone, did not establish a prohibited indirect interest.

There is no contention here that the stockholder has any present proprietary interest in the Boulder outlet or that his wife will employ him in that business. Thus, the protestants' reliance on *Number Three Lounge, Inc. v. Alcoholic Beverages Control Commission,* 7 Mass.App.Ct. 301, 387 N.E.2d 181 (1979) is also misplaced. In *Number Three Lounge,* substantial evidence was presented showing that one branch of a family acted as

"straw" owners of a bar, while members of the other family branch, whose identities had not been disclosed on the license application, effectively controlled the bar.

■ Here, protestants produced no evidence that the stock transfer to the wife was a sham transaction. Rather, they base their argument solely on unsupported assertions that the transfer was only part of a plan to avoid the strictures of the statute, citing such facts as the amount of the applicant's capitalization, the Subchapter S corporate status of the Boulder liquor store, and the existence of "family ties" between the one store and the other. However, nothing in these factual circumstances indicates any retention of control by the stockholder that would warrant the conclusion that the transfer was a "straw" transaction or that he otherwise retained any interest in the Boulder license.

Under these circumstances, the City Council's finding of a lack of any indirect interest is supported by competent evidence on the record, was not arbitrary or capricious, and, thus, cannot be set aside. *See Ross v. Fire & Police Pension Ass'n, supra.*

### III.

■ Protestants also assert that the trial court erred in concluding that the City Council's denial of the license application was unsupported by competent evidence and was, therefore, arbitrary. Again, we disagree.

The district court ruled that the City Council's action was arbitrary and capricious because the only essential fact relied upon by it to rebut the applicant's prima facie showing was the existence of other liquor outlets in the community. Protestants concede that, if Council's decision was based upon that fact alone, it cannot be supported. *See National Convenience Stores, Inc. v. City of Englewood, supra; Southland Corp. v. Westminster City Council, supra.* They assert, however, that there was other competent evidence in the record to support Council's denial. We disagree.

The applicant's evidence, summarized above, established a prima facie case for issuance of the license. *See* § 12–47–137(2)(a), C.R.S. (1991 Repl.Vol. 5B); *Board of County Commissioners v. Salardino*, 136 Colo. 421, 318 P.2d 596 (1957).

The only evidence adduced to rebut this showing, aside from the existence of other outlets, was the fact that 26% of the persons included in the survey expressed opposition to the application. The City Council concluded that this fact was "significant." However, it also discounted the significance of the 74% who favored the application on the basis that the survey represented "only a small portion of the adult population of Louisville." The same statistical data cannot, at one and the same time, be both significant and insignificant simply because of the results produced. Council cannot both accept and reject the survey's methodology, and its inconsistent treatment of this data was arbitrary and capricious and, therefore, improper. *See Ross v. Fire & Police Pension Ass'n, supra.*

Judgment affirmed.

DAVIDSON and TAUBMAN, JJ., concur.